1  RICHARD T. BAUM (SBN 80889)
   11500 West Olympic Boulevard, Suite 400
2  Los Angeles, California  90064-1525
   Telephone:   310.277.2040
3  Facsimile:    310.286.9525

4  LAWRENCE M. JACOBSON (SBN 100939)
   GLICKFELD, FIELDS & JACOBSON LLP
5  9720 Wilshire Boulevard, Suite 700
   Beverly Hills, California  90212
6  Telephone:    (310) 550-7222
   Facsimile:    (310) 550-6222
7
   Attorneys for Plaintiff
8  LAKELAND DEVELOPMENT COMPANY

9

10                    **UNITED STATES BANKRUPTCY COURT**

11                    **CENTRAL DISTRICT OF CALIFORNIA**

12                              **(LOS ANGELES DIVISION)**

13

| | |
|---|---|
| In re | Case No. **2:12-bk-25842 RN** |
| LAKELAND DEVELOPMENT COMPANY, | Adversary No. |
| Debtor. | Chapter 11 |
| | **ADVERSARY COMPLAINT FOR BREACH OF CONTRACT AND TURNOVER** |
| LAKELAND DEVELOPMENT COMPANY, | |
| Plaintiff, | |
| vs. | |
| RIDGELINE ENERGY SERVICES (USA), INC.; and DOES 1 through 10, inclusive, | |
| Defendants | |

Plaintiff ("Lakeland" or "Plaintiff") alleges:

## JURISDICTION AND VENUE

1. This adversary proceeding arises in and is related to the above-entitled Chapter 11 bankruptcy case, *In re Lakeland Development Company*, Central District of California, Los Angeles Division, Bankruptcy Case No. 2:12-bk-25842 RN ("the Lakeland Bankruptcy"). This adversary proceeding is a statutorily and Constitutionally core proceeding.

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §157(b), 11 U.S.C. §1334(a), and General Order No. 13-05 of the United States District Court, Central District of California.

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§157(b)(1), 157(b)(2)(A), 157(b)(2)(E) and 157(b)(2)(O), in that it arises out of breaches of a post-petition contract that was approved by order of this Court, and seeks turnover of property of the estate and payment of a debt to the estate.

4. Venue is proper in this district pursuant to 28 U.S.C. §1409(a) because it is related to the above-entitled bankruptcy case and orders entered therein.

## PARTIES

5. Plaintiff is a corporation existing under and by virtue of the laws of the State of Delaware, with its principal place of business in Los Angeles County, California. Plaintiff is the Debtor and Debtor-in-Possession in the above-entitled Chapter 11 case, which was commenced by Plaintiff's filing of a voluntary petition under Chapter 11 of the United States Bankruptcy Code on May 4, 2012.

6. Defendant Ridgeline Energy Services (USA), Inc. ("Ridgeline") is a corporation, organized under and by virtue of the laws of the State of Delaware, doing business in Los Angeles County, California.

7. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 – 10, and therefore sues those defendants by such fictitious names. For convenience, each reference to a named defendant shall also be deemed to refer to

each of the fictitiously named defendants.  Each of the defendants was the agent, principal, employer and/or employee of each of the remaining defendants, and in doing the things alleged, was acting within the scope of such agency or employment.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

8. In or about April, 2014, Plaintiff and Ridgeline entered into an agreement entitled "Settlement Agreement" ("the Settlement Agreement"), a true and correct copy of which is attached hereto as Exhibit A and incorporated by reference.

9. Pursuant to the Settlement Agreement, Lakeland agreed to release Ridgeline from certain prior obligations (including but not limited to obligations arising under another agreement approved by the Bankruptcy Court), in exchange for which, Ridgeline agreed (among other things) to make certain payments to Plaintiff and to provide stock to Plaintiff, as alleged more specifically below.

10. The Bankruptcy Court in the Lakeland Bankruptcy approved the Settlement Agreement by order entered May 29, 2014 (Docket No. 417).

11. The Settlement Agreement was also conditioned upon close of the sale of approximately 38 acres of Plaintiffs real property to Goodman Santa Fe Springs SPE LLC.  That sale was approved by order of the Bankruptcy Court entered January 13, 2014 (Docket No. 446) and closed on June 23, 2014.

12. Plaintiff has performed all of its obligations under the Settlement Agreement or has been prevented or excused from performing such obligations by virtue of the acts and/or omissions of Ridgeline.

**FIRST CLAIM FOR RELIEF**

**(Breach of Written Contract – Failure to Make Payments)**

13. Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 12, inclusive, of this Complaint, as though set forth in full.

14. Paragraphs 2.4(b) and 2.4(d) of the Settlement Agreement provide that Ridgeline shall pay Plaintiff the sum of $350,000 in equal weekly installments over the course of six months, beginning on the Settlement Agreement's effective date.

15. In our about July 2004, after making the first three payments due under the Settlement Agreement, Ridgeline materially breached the Settlement Agreement by failing and refusing to make any further payments due under the Settlement Agreement.

16. As a direct and proximate result, the sum of $309,615.38 (consisting of the total of all unpaid payments due under the Settlement Agreement) is now due, owing and unpaid from Ridgeline to Plaintiff.

## SECOND CLAIM FOR RELIEF

**(Breach of Written Contract – Failure to Provide Stock)**

17. Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 16, inclusive, of this Complaint, as though set forth in full.

18. Paragraph 2.2 of the Settlement Agreement provides that Ridgeline shall promptly deposit stock in RDX worth $500,000 as of the dates set forth therein ("the $500,000 Shares") into escrow, so that Lakeland can sell the $500,000 Shares to fund groundwater remediation and/or monitoring, with any excess going to Lakeland.

19. Ridgeline has materially breached the Settlement Agreement by failing and refusing to deposit the $500,000 Shares or any portion thereof.

20. As a direct and proximate result, Plaintiff has been damaged in the additional sum of $500,000.

## THIRD CLAIM FOR RELIEF

**(Turnover/Payment of Debt – 11 U.S.C. §542[b])**

21. Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 20, inclusive, of this Complaint, as though set forth in full.

22. Defendant Ridgeline owes a debt that is the property of Lakeland's estate (*i.e.*, the $309,615.38 owing under paragraphs 2.4[b] and 2.4[d] of the Settlement Agreement, as alleged above) and that is matured and payable, but has failed and refused to pay that debt to Lakeland or its estate, despite demand.

/ / /

/ / /

## FOURTH CLAIM FOR RELIEF

**(Turnover of Property of the Estate – 11 U.S.C. §542[a])**

23.    Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 22, inclusive, of this Complaint, as though set forth in full.

24.    Ridgeline is in possession, custody or control of property that Lakeland may use or sell under 11 U.S.C. §363 (i.e. the $500,000 Stock), but has refused to deliver that property to Lakeland or its estate, despite demand.

WHEREFORE, Plaintiff Lakeland Development Company respectfully prays for judgment against defendants as follows:

1. For the sum of $309,615.38, plus interest thereon at the maximum legal rate;
2. For the additional sum of $500,000 resulting from Ridgeline's failure and refusal to provide the $500,000 Shares, plus interest thereon at the maximum legal rate;
3. For an order pursuant to 11 U.S.C. §542(b) that Ridgeline pay Lakeland the sum of $309,615.38, plus interest thereon at the maximum legal rate;
4. For an order pursuant to 11 U.S.C. §542(a) that Ridgeline turn the $500,000 Stock over to Lakeland;
5. For costs of suit; and
6. For such further relief as the Court deems just and proper.

Dated: August 20, 2014            LAW OFFICES OF RICHARD T. BAUM and
                                              GLICKFELD, FIELDS & JACOBSON LLP

By: ___/s/ Lawrence M. Jacobson_____
     LAWRENCE M. JACOBSON
Attorneys for Plaintiff LAKELAND
DEVELOPMENT COMPANY

# EXHIBIT A

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (this "Agreement") is made as of the 14th day of April, 2014, by and among Lakeland Development Company ("LDC"), Ridgeline Energy Services (USA), Inc. ("Ridgeline") and Goodman Santa Fe Springs SPE LLC ("Goodman"). Capitalized terms used herein but not defined herein shall have the meanings given to such terms in the Purchase Agreement (as defined below) or the Program Management Agreement (as defined below).

## RECITALS

WHEREAS LDC is currently a Debtor and Debtor-in-Possession in Central District of California Bankruptcy Case No. 2:12-bk-25842-RN ("the LDC Bankruptcy"), which was commenced by LDC's filing of a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code on May 4, 2012;

WHEREAS LDC, Lakeland Processing Company, LLC ("LPC") and Ridgeline have entered into an Asset Purchase Agreement, as amended, dated April 9, 2012 (the "Asset Agreement");

WHEREAS the Asset Agreement contemplated the lease or purchase of a certain portion of LDC's land (the "Land") including the improvements located thereon (collectively, the "Property") which resulted in entering into the Purchase Agreement, dated as of January 25, 2013, as amended (the "Purchase Agreement"), providing for Ridgeline's purchase of the Property, which closed on April 5, 2013;

WHEREAS the Asset Purchase Agreement and the Purchase Agreement contemplated that the parties would enter into a Program Management Agreement, which Program Management Agreement was entered into as of April 5, 2013 ("Program Management Agreement"), and which Program Management Agreement provided for Ridgeline to complete certain remediation and monitoring activities (the "Activities") with respect to the Land on behalf of LDC;

WHEREAS pursuant to the Purchase Agreement and the Program Management Agreement, Ridgeline and LDC agreed that a portion of the Purchase Price would be allocated to the Activities, and that such portion of the Purchase Price would be put into an escrow account that could be used for funding of the Remediation (as defined in Paragraph 3.1); and

WHEREAS LDC and Ridgeline desire to (1) terminate the Program Management Agreement, and (2) modify the post-closing covenants of each party set forth in the Purchase Agreement, all as set forth below.

## AGREEMENT

The Parties hereby agree as follows, subject to Final Bankruptcy Court Approval (as defined in paragraph 8.8 of this Agreement) and the closing of the Goodman Transaction (as defined in paragraph 8.9 of this Agreement):

## ARTICLE I.

### TERMINATION OF PROGRAM MANAGEMENT AGREEMENT

1.1 Effective as of the later of (a) the date of Final Bankruptcy Court Approval, (b) the closing of the Goodman Transaction and (c) the full performance by Ridgeline of its obligations under paragraphs 2.1(b), 2.2 and the assignment to Goodman as contemplated in paragraph 8.2 of this Agreement ("the Effective Date"), the Program Management Agreement is terminated and is of no further force and effect.

## ARTICLE II.
### PAYMENT OBLIGATIONS AND CLAIMS ON INSURANCE

2.1 (a) Effective as of the Effective Date, all post-closing obligations of Ridgeline to pay LDC consideration set forth in the Purchase Agreement or to issue shares of common stock of Ridgeline's parent as set forth in Schedule I, paragraph a.vi. through paragraph a.vii, inclusive, of the Purchase Agreement, relating to the issuance of stock or notes intended to be placed into escrow to be used to pay for the remediation of the Land, are hereby terminated and of no further force and effect. For the avoidance of doubt, effective as of the Effective Date, Ridgeline will have no further obligations to pay any consideration to LDC relating to the issues set forth in the Purchase Agreement except as set forth herein, including (without limitation) as set forth in Paragraph 2.4 of this Agreement.

(b) Upon execution of this Agreement, Ridgeline shall promptly place into Escrow (as hereinafter defined) the shares of Ridgeline's parent company and notes that were to be delivered to LDC pursuant to the Purchase Agreement in July 2013, October 2013, January 2013 and April 2014. These shares will be released from Escrow to Ridgeline on the Effective Date. LDC agrees that Ridgeline may votes these shares that are held in Escrow and it hereby gives Ridgeline proxy to vote these shares, to the extent permitted under applicable law; provided, however, that Ridgeline will not have the right to vote these shares if such shares are held in Escrow after the later of (1) May 31, 2014, or (2) the date that it is determined that the Goodman Transaction will not be consummated.

2.2 In order to fund a five hundred thousand dollar escrow for future groundwater remediation and/or monitoring for Off Property Impacts, as described in Paragraph 3.4 below, Ridgeline shall issue to LDC $500,000 of common stock of Ridgeline's parent, which shall be priced at the volume weighted average price of common stock of Ridgeline's parent for the 10 trading days prior to the date of this Agreement. Such shares shall be promptly issued and held in Escrow by Arizona Escrow & Financial Corporation ("Arizona") pursuant to an Escrow Agreement with Arizona (the "Escrow). Said Escrow Agreement shall provide that the shares can be sold by LDC to fund groundwater remediation and/or monitoring (subject to compliance with all applicable securities laws) and any remaining shares or cash shall be released to LDC upon receipt of an NFA (as defined in Paragraph 3.1 of this Agreement) covering LDC's groundwater obligation for Off Property Impacts, or evidence that an NFA is no longer required.

2.3 Ridgeline acknowledges and agrees that Ridgeline has no claim, right or other interest in or to any insurance proceeds payable under the ACE Policies (as hereinafter

2

D2
AM

defined), except as specifically provided in this Agreement. In the event Ridgeline receives any proceeds from the ACE Policies and/or proceeds paid under the ACE Policies are used to pay for any remediation costs with respect to remediation performed on the Land, Ridgeline will immediately pay, assign and forward all such amounts to LDC (or an affiliate of LDC, if so requested by LDC and approved by the bankruptcy court, if necessary). Notwithstanding the foregoing, in no event shall Ridgeline be responsible for paying, assigning or forwarding to LDC any amounts paid under the ACE Policies to the extent that such amounts are used for Off-Property Impacts.

2.4 (a) Nothing herein is intended to terminate or release Ridgeline from any obligations to pay or reimburse LDC amounts due under the Promissory Note dated April 5, 2013 in the amount of $392,857.

(b) Ridgeline will pay LDC $350,000 in full satisfaction of past or future (i) movie shoots, (ii) sales of wastewater equipment which is to be split between the parties, (iii) overhead reimbursement obligations pursuant to Section 7 or Section 8 of that certain Management Contract, dated as of April 8, 2012, as amended, that survived the termination of such Management Contract, (iv) the $156,000 relating to an alleged mechanics lien filed by IRG Assumptions, which is no longer on title due to improper filing and (v) any other claims LDC or its affiliates may have against Ridgeline or its affiliates. Notwithstanding anything to the contrary herein, Ridgeline will still owe LDC for any payments or other obligations existing under current written agreements between Ridgeline and LDC that are not mentioned in this Agreement or that are not related to agreements mentioned in this Agreement.

(c) The amounts due LDC described above in Section 2.4(a) shall be paid to LDC, in cash, on or before the closing of the Goodman Transaction.

(d) The amounts due LDC described in Section 2.4(b) shall be paid to LDC in cash, in equal weekly installments, over six months, beginning on the Effective Date.

### ARTICLE III.
### REMEDIATION OBLIGATIONS

3.1 As consideration for the foregoing, and except as otherwise provided in Paragraph 3.4 below, Ridgeline shall be responsible for all costs to remediate hazardous materials (the "Remediation") existing in, on, and under the Land (the "Environmental Condition") as necessary to obtain "no further action" status (or the equivalent) ("NFA") from the California Regional Water Quality Control Board, Los Angeles Region ("RWQCB") and other applicable governmental agencies.

3.2 The Remediation shall be performed pursuant to the Remedial Action Plan, dated January 6, 2014 (the "RAP") (or as modified by requirement or agreement by the RWQCB), which is designed to address the Environmental Condition only. The RAP will not address hazardous substances impacts existing in soil, soil vapor or groundwater on or beneath properties other than the Land, or any portion of the 55 acres originally owned by LDC ("Off-Property Impacts"). Upon issuance of the NFA, Ridgeline's obligation to perform the Remediation will be automatically discharged.

3

3.3     If requested by LDC, Ridgeline (and Goodman, upon the closing of the Goodman Transaction), on a quarterly basis, agrees to provide LDC with a statement documenting the Remediation costs along with copies of invoices for such Remediation costs, which LDC or an affiliate of LDC, Powerine Oil Company, may present to its insurers under the ACE Policies for reimbursement. Ridgeline acknowledges that Powerine Oil Company is currently in litigation with certain insurance carriers regarding existing environmental insurance policies ("the ACE Policies") for coverage with respect to soil and groundwater remediation of the Land. Nothing herein is intended to reduce, eliminate or otherwise affect any obligation that Powerine Oil Company may have relating to the remediation of the Land under the terms of the California Regional Water Quality Board Clean Up and Abatement Order 97-118.

3.4     LDC will be responsible for and will exercise diligent efforts to obtain NFA status from the RWQCB (and any other governmental agency exercising jurisdiction over the environmental condition of the Land) relating to the Off-Property Impacts emanating from the Land. Ridgeline acknowledges that such remediation will likely occur through a regional response involving multiple third parties whose historic operations contributed to the Off Property Impacts. LDC shall be responsible for performing the remediation, or causing the performance of the remediation required for achieving NFA status according to standards imposed by the governing authorities (including without limitation, the RWQCB) pursuant to a RWQCB approved remedial action plan for such Off Property Impacts ("GW RAP"). In addition, if required, LDC will be responsible for ongoing groundwater monitoring activities or any other testing or monitoring required by governmental authorities (including, without limitation, RWQCB) and/or as provided in the GW RAP, and will conduct or cause to be conducted such monitoring activities in a manner consistent with RWQCB requirements and industry standards.

## ARTICLE IV.
## REPRESENTATIONS AND WARRANTIES OF RIDGELINE

Ridgeline represents and warrants as follows:

4.1     Ridgeline is a validly existing corporation, duly organized and validly existing in its state of formation.

4.2     Ridgeline has all requisite power, authority and legal right to execute and deliver this Agreement and to consummate the transactions and perform its obligations hereunder.

4.3     This Agreement has been duly executed and delivered by Ridgeline and is the legal, valid and binding obligation of Ridgeline, enforceable against Ridgeline in accordance with its terms and provisions, subject to Bankruptcy Court Approval.

4.4     Ridgeline is currently solvent, the fair market value of its assets exceeds the sum of its liabilities, and it can pay and is paying its debts as they come due.



## ARTICLE V.
## REPRESENTATIONS AND WARRANTIES OF LDC

LDC represents and warrants that:

5.1 LDC is a validly existing corporation, duly organized and validly existing in its state of formation

5.2 LDC has all requisite power, authority and legal right to execute and deliver this Agreement and to consummate the transactions and perform its obligations hereunder.

5.3 The execution, delivery and performance by LDC have been duly authorized by all necessary action on the part of LDC.

5.4 This Agreement has been duly executed and delivered by LDC and is the legal, valid and binding obligation of LDC, enforceable against LDC in accordance with its terms and provisions, subject to Bankruptcy Court Approval.

5.5 Based upon the environmental studies performed to date, there is no evidence that the soil on the Land may be considered "hazardous" under Resource Conservation Recovery Act (RCRA).

## ARTICLE VI.
## COVENANTS

6.1 Further Assurances. Each party hereto agrees to perform all acts and to execute and deliver any documents that may reasonably be necessary to carry out the provisions of this Agreement.

## ARTICLE VII.
## RELEASE

7.1 To the fullest extent permitted by law, each party hereto shall release and hold harmless each other party and each other party's contractors, subcontractors, agents and related companies, and the officers, directors, partners, members, insurers, attorneys, shareholders, board members, employees, and agents of each and any of them, against and from any and all claims and liability arising under, by reason of, related, or incidental to the failure of a party hereto to perform any remediation required to be performed by such party herein, to the extent not caused by the negligence or willful misconduct of the part(ies) with respect to the performance of such remediation work. The foregoing release shall not apply to each party's obligations pursuant to this Agreement. In addition, notwithstanding anything to the contrary herein, Ridgeline will still owe LDC for any payments or other obligations existing under current written agreements between Ridgeline and LDC that are not mentioned in this Agreement or that are not related to agreements mentioned in this Agreement

## ARTICLE VIII.
## MISCELLANEOUS

8.1   The warranties, representations and covenants of the parties contained in or made pursuant to this Agreement shall survive the execution and delivery of this Agreement.

8.2   Ridgeline may assign its rights and obligations hereunder to one of its affiliates that can satisfy the obligations of paragraphs 4.1 and 4.4 of this Agreement, but, except as set forth below, Ridgeline shall not be relieved of liability for the obligations in this Agreement without the express written and signed consent of LDC. Except as otherwise provided herein, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties. Nothing in this Agreement, express or implied, is intended to confer upon any party, other than the parties hereto or their respective successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement. Notwithstanding anything to the contrary herein, Ridgeline shall assign its rights and obligations hereunder to Goodman, or to an affiliate of Goodman (as specified by Goodman), at the closing of the Goodman Transaction. LDC, hereby consents to such assignment by its execution of this Agreement. Except for the obligations set forth in Article II of this Agreement and in this paragraph 8.2, which are exclusively the obligation of Ridgeline (except as otherwise provided in agreements entered into between Ridgeline and Goodman subsequent to and separate from this Agreement), Goodman hereby agrees that it is liable and obligated to perform all obligations of Ridgeline under this Agreement upon closing of the Goodman Transaction.

8.3   This Agreement shall be governed by and construed under the laws of the State of California.

8.4   All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (i) upon personal delivery to the party to be notified, (ii) when sent by confirmed facsimile or e-mail if sent during normal business hours of the recipient, if not, then on the next business day; (iii) five days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (iv) one day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent to the address as set forth on the signature page hereof or at such other address as such party may designate by ten days advance written notice to the other parties hereto.

8.5   Any term of this Agreement may be amended and the observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of LDC and Ridgeline (or Goodman, as applicable).

8.6   This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

6

8.7     Except as hereby modified by this Agreement, all of the terms of the Purchase Agreement and the representations and warranties contained therein that are expressly stated as surviving closing thereunder shall continue to survive and remain in full force and effect.

8.8     The parties agree to execute a stipulation seeking approval of this Agreement by the Bankruptcy Court in the LDC Bankruptcy. This Agreement is not effective unless and until approved by an order of the Bankruptcy Court in the LDC Bankruptcy ("the Approval Order"), which has become final in that (a) the period for appeal of the Approval Order has expired without any appeal having been filed, (b) a ruling affirming the Approval Order has been entered on appeal and is no longer subject to challenge or further appeal or (c) the dismissal of all appeals of the Approval Order after the appeal period has expired. The finality of the Approval Order, as set forth in the preceding sentence, is referred to in this Agreement as the "Final Bankruptcy Court Approval."

8.9     The parties agree that this Agreement is not effective unless and until the sale transaction contemplated by that certain Agreement of Purchase and Sale and Joint Escrow Instructions between Ridgeline, as Seller, and Goodman, as Buyer, dated as of February 10, 2014, is consummated (the "Goodman Transaction"). In the event that the Goodman Transaction is not consummated on or before June 30, 2014 (the "Termination Date"), this Agreement will terminate and be of no further force and effect; provided, however, that if the Goodman Transaction is not consummated on or before the Termination Date primarily as a result of Goodman, Ridgeline and LDC shall negotiate in good faith for an extension of the Termination Date.

8.10    This Agreement shall be binding upon the assigns, representatives and successors of the parties hereto, including without limitation, Goodman. This Agreement shall insure to the assigns, representatives and successors of the parties hereto, including without limitation, Goodman.

8.11    If any provision of this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein. One or more waivers of any term, condition or other provisions of this Agreement by either Ridgeline (or Goodman, as applicable) or LDC shall not be construed as a waiver of any other provision.

[SIGNATURE PAGE FOLLOWS]



7

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above-written.

| | |
|---|---|
| **RIDGELINE ENERGY SERVICES (USA), INC.** | **LAKELAND DEVELOPMENT COMPANY** |
| By: *Dennis M. Danzik* | By: *Vincent Pofia* |
| Its: Chief Executive Officer | Its: *Secretary & General Counsel* |

Notice:

RDX Technologies Corporation
Ridgeline Energy Services (USA), Inc.
14555 N 82nd Street
Scottsdale, AZ 85260
Attention: Kevin M. Bridges (CFO)
Facsimile: (602) 845-8935
Email: bridges@rdxh2o.com

With copy to:
Dorsey & Whitney LLP
50 South Sixth Street Suite 1500
Minneapolis, MN 55402-1498
Attention: Michele J. Thurnblom
Facsimile: (612) 340-2644
Email: thurnblom.michele@dorsey.com

Notice:

**GOODMAN SANTA FE SPRINGS SPE LLC**

By: *[signature]* ALAN COCKBURN

Its: *Secretary*

Notice:

18201 Von Karman Avenue, Suite 1170
Irvine, CA 92612
Attention: Alan Cockburn, Esq. and Lang Cottrell

Facsimile: (949) 502-5505
Email: Alan.Cockburn@Goodman.com;
Lang.Cottrell@Goodman.com

With copy to:
Cox, Castle & Nicholson LLP
19800 MacArthur Boulevard, Suite 500
Irvine, CA 92612
Attention: John W. Kittleson, Esq.
Facsimile: (949) 476-0256
Email: jkittleson@coxcastle.com

FORM B104 (08/07)                                              2007 USBC, Central District of California

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Page 2) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>Lakeland Development Company | **DEFENDANTS**<br>Ridgeline Energy Services (USA), Inc.; and DOES 1 through 10, inclusive |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Lawrence M. Jacobson, Glickfeld, Fields & Jacobson LLP<br>9720 Wilshire Blvd., Suite 700<br>Beverly Hills, CA 90212 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☑ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☑ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Damages for breach of post-petition contract, approved by Bankruptcy Court order; turnover of property and payment of debt to Debtor.

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
[2] 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
[1] 14-Recovery of money/property - other
     Breach of Postpetition Contract approved by Court

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 809,615.38 |

**Other Relief Sought**
Turnover of Property and Debt

FORM B104 (08/07), page 2                                                         2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
|---|---|
| **NAME OF DEBTOR** <br> Lakeland Development Company | **BANKRUPTCY CASE NO.** <br> 2:12-bk-25842 |
| **DISTRICT IN WHICH CASE IS PENDING** <br> Central District of California | **DIVISIONAL OFFICE** <br> Los Angeles Division | **NAME OF JUDGE** <br> Richard M. Neiter |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
|---|---|---|---|
| **PLAINTIFF** | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** | |
| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISIONAL OFFICE** | **NAME OF JUDGE** | |

**SIGNATURE OF ATTORNEY (OR PLAINTIFF)**

*[signature]*

| **DATE** <br> 8/20/14 | **PRINT NAME OF ATTORNEY (OR PLAINTIFF)** <br> Lawrence M. Jacobson |
|---|---|

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.