RICHARD T. BAUM
State Bar No. 80889
11500 West Olympic Boulevard
Suite 400
Los Angeles, California  90064-1525
Tel:    (310) 277-2040
Fax:    (310) 286-9525

LAWRENCE M. JACOBSON (SBN 100939)
GLICKFELD, FIELDS & JACOBSON LLP
9720 Wilshire Boulevard, Suite 700
Beverly Hills, California  90212
Telephone:  (310) 550-7222
Facsimile:  (310) 550-6222

Attorneys for Debtor and Debtor-in-Possession
LAKELAND DEVELOPMENT COMPANY

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | | |
|---|---|---|
| In re | ) | No.  2:12-bk-25842 RN |
| | ) | |
| LAKELAND DEVELOPMENT COMPANY, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | **CHAPTER 11 STATUS REPORT; DECLARATION OF VINCENT PAPA** |
| | ) | |
| | ) | Date:        March 12, 2015 |
| | ) | Time:        2:00 pm |
| _____ | ) | Ctrm:        1645 |

**TO THE HONORABLE RICHARD NEITER, UNITED STATES BANKRUPTCY**

**JUDGE:**

Debtor-in-Possession LAKELAND DEVELOPMENT Company ("Lakeland" or

"Debtor") submits this Status Report to (a) show its progress and remaining issues in

fulfilling its remaining duties regarding the land it sold, (b) spotlight the recent resolution of

1    those disputes between Lakeland and one of those buyers (Ridgeline Energy Services

2    [USA], Inc.), which will now redound to the benefit of the estate, (c) advise the court of the

3    recent death of Lakeland's director and president Siegfried Hodapp, and steps taken to

4    ensure the company's continuity and reorganization, and (d) explain why Lakeland

5    withdrew its Second Amended Plan of Reorganization and its intention to file a new plan

6    by April of this year.

7

8                    ***Lakeland-Goodman-Ridgeline and Draining the Tanks.***

9        When Lakeland sold the 38 acre parcels to Goodman Santa Fe Springs SPE LLC

10   ("Goodman"), it agreed to remove the storage tanks and other above-ground material on

11   that portion of the property.  It had an agreement with Ridgeline Energy Services (USA)

12   Inc. ("Ridgeline") whereby Ridgeline would remove the water and sludge from one of the

13   tanks (No. 17001).  Similar agreements exist between Ridgeline and Goodman[1].

14   Ridgeline refused to remove the water and sludge from tank 17001, which Lakeland then

15   removed at its own cost.  Four other tanks await removal by Lakeland, but are still filled

16   with water and sludge, the removal of which is a duty Ridgeline owes to Goodman.

17        Ridgeline's attempts to move sludge from the tanks on-site were prohibited by a Los

18   Angeles Superior Court injunction issued on the request of the Southern California Air

19   Quality Management District ("AQMD") because Ridgeline did not get its plan for doing so

20   approved by the AQMD.  Ridgeline is enjoined from removing sludge from the tanks

21   without AQMD approval.  Its plan is presently under review.

22        Goodman's initial efforts at remediating the contamination on the property were

23   centered in the area of tank 17001, so Lakeland undertook to remove the water, the

24   sludge, and the tank from the property.  Lakeland believes that this saved it from a very

25 ────────────────────

26        [1]Ridgeline and Goodman executed a letter agreement dated March 4, 2013 under
which they agreed to enter into a license agreement once Goodman acquired the 38 acre
27   parcels, which license agreement required, *inter alia*, Ridgeline to remove the material from
the tanks.
28

1   large administrative claim based on its contractual obligation to Goodman to remove the

2   tanks, which cannot be done unless and until those tanks are emptied.

3       Four other tanks are on the property which Lakeland must remove.  There is an

4   agreement between Ridgeline and Goodman whereby Ridgeline undertook to drain and

5   clean those tanks, though it is unclear the extent that Goodman is pressing Ridgeline to

6   fulfill the obligation.   Under the Ridgeline Settlement Agreement (discussed below),

7   Ridgeline promises to drain and clean those four other tanks.

8       Lakeland is determining the extent to which the equipment on the property is

9   competent to process the water[2], which might be ejected into the sewer system, and

10  whether it can be done without Ridgeline's participation.  This will, at least, move the

11  process along, and it will give Lakeland a basis to make projections on future costs.

12

13      ***The Lakeland-Ridgeline Settlement.***

14      Lakeland and Ridgeline just signed a settlement agreement that will resolve a

15  number of issues between them.  Lakeland will file a motion for approval of that settlement

16  before the Status Conference.

17      Lakeland filed an adversary proceeding against Ridgeline obtained a default

18  judgment for $662,998.33 based on Ridgeline's delay in delivery of certain stock of

19  Ridgeline's parent company (RDX Technology, Inc. - herein "RDX"), and  failure to pay

20  certain agreed sums due under in a prior agreement.  Ridgeline has moved to set aside

21  that judgment.  Since then, Lakeland contends that Ridgeline breached the agreement to

22  drain and clean tank 17001 which caused a large expenditure by Lakeland.  In settlement

23  of that dispute, Ridgeline will deliver RDX stock having a total value of $750,000 to

24  Lakeland.   The stock will be delivered in three monthly tranches (unless the Toronto

25  Ventures Exchange requires a different schedule) and will have a limited period during

26  which it cannot be sold, after which Lakeland may sell the stock at its discretion.  In return,

27

28      [2]Ridgeline removed a substantial amount of equipment over the last several months.

1    Lakeland will dismiss the Adversary Proceeding, or alternatively, file an Acknowledgment

2    of Full Satisfaction of Judgment, and it will give up any claims against Ridgeline in

3    connection with Tank 17001 and other above-ground removal costs.  Ridgeline also agrees

4    to process the water in the remaining tanks on the 38 acres parcels, to use its best effort

5    to obtain AQMD permission to process and dispose of the sludge in the tanks, and to do

6    so.  Lakeland believes that the settlement is in the estate's best interest, because it brings

7    $750,000 into the estate, and avoids the substantial expense and risk of litigation and

8    collection (including fighting Ridgeline's motion to set aside the judgment, a costly trial if

9    that motion is successful, the risk that Ridgeline does not have sufficient assets to satisfy

10   a judgment, the expense of having to conduct discovery as to potential liability of

11   Ridgeline's parent RDX, seeking to have RDX added as a judgment debtor, and then trying

12   to collect on a judgment against RDX in other jurisdictions).

13

14        ***Passing of Siegfried Hodapp.***

15        Siegfried Hodapp, Lakeland's sole director and president, and the largest

16   shareholder of Lakeland's parent company, died unexpectedly on January 7, 2015 in Viet

17   Nam.  This report will update the court on the steps taken to ensure the continuity of

18   Lakeland and its intended reorganization.

19        Mr Hodapp held 58% of the voting shares of Energy Merchant Corp. ("EMC") which

20   in turn owns 100% of Energy Merchant Holding Corp., which in turn owns 100% of

21   Lakeland.  EMC also owns 100% of Powerine Oil Company ("Powerine").  Mr Hodapp was

22   the sole director and the president of each of those corporations.  His passing leaves a

23   hole in the structure and control of the Debtor.

24        In order to ensure Lakeland's continuity and ability to reorganize, the remaining

25   shareholders and Mr. Hodapp's executors appointed Vincent Papa (currently EMC and

26   Lakeland's Secretary and General Counsel) as interim sole director and president, with the

27   intent and understanding that Lakeland will continue its present course of working with

28

**CHAPTER 11 STATUS REPORT**

1 Goodman and Ridgeline, objecting to certain claims and proposing a reorganization plan

2 that will include a substantial contribution by Powerine.  (Papa Declaration - attached

3 hereto - at ¶¶ 7-9, Exh. A.)[3]   The appointments are for a period of not more than 120 days

4 dating from the date of the corporate resolution, with the intent and understanding that they

5 will be made more permanent once Mr. Hodapp's executors receive letters testamentary.

6 These appointments guaranty continuity in this case and the commitment to the

7 current course for this bankruptcy, both going forward with the anticipated Plan as well as

8 the capital infusion from Powerine which forms part of that Plan.

9

10 ***Withdrawal of the Second Amended Plan and Filing Third Amended Plan.***

11 Lakeland withdrew its Second Amended Plan because it was concerned that it does

12 not currently have sufficient information regarding matters with potential financial and

13 temporal impact on the proposed plan, which are necessary to satisfy the requirements of

14 11 USC §1125(a).  Lakeland expects to have more information in the next few weeks, at

15 which time it will submit a proposed Third Amended Plan[4] and disclosure statement.

16 Ridgeline must move the water in the tanks and go forward with its plans submitted

17 to the AQMD to remove and process the sludge in order for Lakeland to remove the tanks.

18 The real test will be whether Ridgeline actually does so, which could significantly cut down

19 Lakeland's exposure to Goodman for alleged administrative claims[5].  However, if Ridgeline

20 doesn't move the water, the financial impacts must be shown in the Disclosure Statement.

21 It is anticipated that these questions will be answered by March 31.  In addition, Lakeland

22 has asked the Court to set April 15 as an supplemental bar date for claims listed in

23
24 [3]Technically, Mr. Papa has been appointed president and director of EMC, which the understanding and intent that he will then cause EMC to appoint him and president and director of  Lakeland and Powerine.  The resolution also appoints other officers.

25
26 [4]The Court has not yet reviewed or considered a plan in any detail.  The Court asked Lakeland to withdraw the original Plan and First Amended Plan because they were filed prior to the sale of the Property.

27
28 [5]Lakeland has several defenses to such claims.

**CHAPTER 11 STATUS REPORT**

1    Lakeland's amended Schedule F as disputed, unliquidated or contingent.[6]  Consequently,

2    Lakeland intends to file an amended Plan and Disclosure Statement in April.

3

4         *Claims Objections*.

5         Two of Powerine's insurers filed Proofs of Claim totaling over $5.5-million on

6    theories of equitable contribution, subordination and indemnity.  Objections to these claims

7    are anticipated to be filed very soon[7].  Lakeland amended its schedules, listed a number

8    of claims as "disputed", and sought an order for a supplemental Bar Date to enable those

9    creditors whose claims are now listed as disputed to file proofs of claim if they have not

10   already filed proofs of claim.  Entry of the order is expected imminently, and the proposed

11   Supplemental Bar Date is April 15, 2015.

12

13        *Financial Performance and Projections.*

14        Attached are the comparison between projected and actual budgets for the

15   November 2014 - February 2015 period (Exhibit 1), as well as the projected budget for

16   March - June 2015 (Exhibit 2).  The greatest discrepancy between projected and actual

17   budgeted item relates to the costs of removal of Tank 17001 and other above-ground

18   materials, a cost increase of $612,321.[8]  Most other costs were reduced, including a drop

19   in payroll of over $30,000.

20        The future projections are made with limited expenditures to remove water, sludge

21   ───────────────

22        [6]No opposition was filed to that request, so Lakeland has lodged an order to that
     effect, but it has not yet been entered as of the date of this Status Report.

23        [7]The insurers' counsel has informed Lakeland's counsel that the insurers may file
24   amended claims based on the same legal grounds, but with increased amounts. However,
     the claim objections are based almost exclusively on the insurers' legal theories, rather
25   than the amounts.

26        [8]As noted above, the cost to the estate would have been substantially more if
     Lakeland had not performed that work, because Goodman would have performed the work
27   itself, at substantially higher cost, and then sought an administrative claim against
     Lakeland for its cost of doing so.

28

**CHAPTER 11 STATUS REPORT**

1    and tanks.  Payroll is reduced by 25% in May (though there are three pay periods), and by

2    50% in June as expected operations are wound down.  Legal fees are currently running

3    well below previous periods and are expect to be further reduced below previous

4    projections.  It is anticipated that income will be produced from the sale of the Ridgeline

5    stock which is on-hand, and that stock which is anticipated in being received when the

6    Ridgeline compromise is approved.

7

8    DATED: February 26, 2015          LAW OFFICES OF RICHARD T. BAUM and
                                        GLICKFELD, FIELDS & JACOBSON LLP
9
                                        */s/ Richard T. Baum*
10                                      _____
11                                      RICHARD T. BAUM, Attorney for Debtor-in-
                                        Possession LAKELAND DEVELOPMENT
12                                      COMPANY

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CHAPTER 11 STATUS REPORT**

## **DECLARATION OF VINCENT PAPA**

I, Vincent Papa, declare as follows:

1.      I am currently President, Secretary and General Counsel of Debtor Lakeland Development Company ("Lakeland").  I have personal knowledge of the facts stated herein and if called and sworn as a witness I could and would testify competently thereto.

2.      I make this declaration to explain the recent circumstances resulting from the unexpected death of Siegfried Hodapp, who was the sole director and president of Lakeland and its indirect parent company Energy Merchant Corp. ("EMC").

3.      Lakeland is wholly owned by Energy Merchant Holding, Inc., which in turn is wholly owned by EMC.   Powerine Oil Company ("Powerine") is also wholly owned by EMC.

4.      Mr. Hodapp owned approximately 58% of the stock in EMC.  EMC's other shareholders are Lorrenz Fisher Zernin (17%), Michael Cornish (12%), Demetri Diakolios (4%), Patrick Schnitzer (3%), and Acetex Corporation (5%), and myself (1%).

5.      Mr. Hodapp was also the sole director and president of EMC, Powerine and Lakeland.

6.      Mr. Hodapp passed away suddenly and unexpectedly on January 7, 2015 in Viet Nam resulting in an extensive delay in obtaining necessary documents to file for probate..

7.      I have personally seen Mr. Hodapp's will, which names two executors: Katrin Hodapp (Mr. Hodapp's daughter) and Elizabeth Moy.   I have personally spoken to Ms. Hodapp and Ms. Moy on several occasions since Mr. Hodapp's death.  They each told me that:

    a.      They are in the process of opening probate for Mr. Hodapp's will in New York.

    b.      They intend to have me named as EMC's director and president.

1

c.      They understand and approve that EMC will appoint me as director and president of EMC's subsidiaries, including Lakeland and Powerine.

d.      They are in agreement with Lakeland's plan to propose a reorganization plan under which Powerine will contribute $1,500,000 to Lakeland in exchange for preserving the benefit of tax credits (currently approximately 14 million dollars), which I understand can only be used by companies that own or are under under common ownership with Lakeland.

e.      They are also in agreement with Lakeland's plan to continue to work with Ridgeline and Goodman in connection with remediating the property and to object to claims against Lakeland's estate that Lakeland does not believe are valid.

8.      I have also spoken with all of EMC's other shareholders (except for Acetex Corporation, which has gone out of business), since Mr. Hodapp's death, and they have told me that they are likewise in agreement with all of the matters set forth in the preceding paragraph of this declaration.

9.      The shareholders of EMC (except for Acetex Corporation, which cannot be located) and Mr. Hodapp's executors have signed a Consent of Shareholders and resolution appointing me as interim director and president of EMC for a period not to exceed four months, so that EMC, Lakeland and Powerine can continue to operate pending issuance of letters testamentary for Mr. Hodapp's estate.  A true and correct copy of that document is attached as <u>Exhibit A</u>. As interim director and president of EMC, I have prepared resolutions to have myself appointed as interim director and chief executive officer of Lakeland and Powerine, in accordance with the wishes expressed by EMC's shareholders and Mr. Hodapp's directors, as set forth in paragraphs 7 and 8 of this declaration.

1       I declare under penalty of perjury under the laws of the United States of America

2  that the foregoing is true and correct.

3       Executed this 25 day of February, 2015 at New York, New York.

4

5                 VINCENT PAPA

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# CONSENT
## OF
## SHAREHOLDERS
## OF
## ENERGY MERCHANT CORP.

The UNDERSIGNED, being the Shareholders of Energy Merchant Corp. (the "Company") and acting in accordance with the authority contained in the Delaware Corporation Law (the "Act") does hereby unanimously consent in writing that the following resolution shall have the same force and effect as if duly adopted at a meeting of Shareholders of the Company duly called and held in accordance with law and the Act on February 23, 2015.

## RECITALS

WHEREAS, Siegfried K. Hodapp (Hodapp) the President and sole Director of the Company died suddenly in mid-January in the country of Vietnam,

WHEREAS, Hodapp was the holder of approximately 58% of the voting stock of the Company prior to his death,

WHEREAS, due to the complexities of dealing with the rules and regulations of a foreign government in acquiring required certified documents and the need for knowledgeable counsel to handle anticipated complex issues in dealing with Hodapp's Last Will and Testament (Will), Probate Counsel has not yet been appointed and the Will has not yet been admitted to Probate,

WHEREAS, the Will appoints Katrin Ildiko Hodapp and Elizabeth Moy as co-Executors of the Will and as Co-Executors they have an obligation to provide for the orderly preservation of the assets of Hodapp and in that regard believe that providing for the orderly corporate governance of the Company and its subsidiaries, including but not limited to Lakeland Development Company which is currently the debtor in possession in a Chapter 11 bankruptcy case and Powerine Oil Company which is currently a party to a lawsuit concerning insurance coverage for environmental liabilities, is critical to its operation,

THEREFORE, this Consent provides for an interim Sole Director and Officers for a period not to exceed 120 days from the date of this Consent with full and complete power and authority as if elected for a full term, to allow for Probate administration to begin, at which time prior to the end of the 120 day period another Shareholders meeting will be called for the election of Directors and Officers;

RESOLVED, that the following person is elected as the Sole Director of the Company, to hold office until the next Shareholders meeting and until the respective successors are chosen and qualify;

Vincent J. Papa

RESOLVED, that the following named persons be and hereby are elected officers of this Company to hold office as provided in the by-laws and until their respective successors are chosen and qualify;

| | |
|---|---|
| President | Vincent J. Papa |
| Chief Financial Officer | Michael Egner |
| Vice President | Thomas Shiah |
| Secretary | Vincent Papa |
| Assistant Secretary | Elizabeth Moy |

IN WITNESS THEREOF, each of the undersigned has executed this Unanimous Consent of Shareholders as of the day and year set forth above.

_____
Katrin Ildiko Hodapp
Co-Executor of Hodapp Estate

_____
Elizabeth Moy
Co-Executor of Hodapp Estate

_____
Michael Cornish

_____
Vincent J. Papa

_____
Patrick Schnitzer

_____
Lorenz Fischer-Zernin

_____
Demetrios Diakolios

NYC FEB 25, 2014

RESOLVED, that the following person is elected as the Sole Director of the Company, to hold office until the next Shareholders meeting and until the respective successors are chosen and qualify;

Vincent J. Papa

RESOLVED, that the following named persons be and hereby are elected officers of this Company to hold office as provided in the by-laws and until their respective successors are chosen and qualify;

| | |
|---|---|
| President | Vincent J. Papa |
| Chief Financial Officer | Michael Egner |
| Vice President | Thomas Shiah |
| Secretary | Vincent Papa |
| Assistant Secretary | Elizabeth Moy |

IN WITNESS THEREOF, each of the undersigned has executed this Unanimous Consent of Shareholders as of the day and year set forth above.

_____
Katrin Ildiko Hodapp
Co-Executor of Hodapp Estate

_____
Elizabeth Moy
Co-Executor of Hodapp Estate

_____
Michael Cornish

_____
Vincent J. Papa

_____
Patrick Schnitzer

_____
Lorenz Fischer-Zernin

_____
Demetrios Diakolios

RESOLVED, that the following person is elected as the Sole Director of the Company, to hold office until the next Shareholders meeting and until the respective successors are chosen and qualify;

Vincent J. Papa

RESOLVED, that the following named persons be and hereby are elected officers of this Company to hold office as provided in the by-laws and until their respective successors are chosen and qualify;

| President | Vincent J. Papa |
|---|---|
| Chief Financial Officer | Michael Egner |
| Vice President | Thomas Shiah |
| Secretary | Vincent Papa |
| Assistant Secretary | Elizabeth Moy |

IN WITNESS THEREOF, each of the undersigned has executed this Unanimous Consent of Shareholders as of the day and year set forth above.

_____
Katrin Ildiko Hodapp
Co-Executor of Hodapp Estate

_____
Elizabeth Moy
Co-Executor of Hodapp Estate

_____
Michael Cornish

_____
Patrick Schnitzer

_____
Vincent J. Papa

_____
Lorenz Fischer-Zernin

_____
Demetrios Diakolios

RESOLVED, that the following person is elected as the Sole Director of the Company, to hold office until the next Shareholders meeting and until the respective successors are chosen and qualify;

Vincent J. Papa

RESOLVED, that the following named persons be and hereby are elected officers of this Company to hold office as provided in the by-laws and until their respective successors are chosen and qualify;

| | |
|---|---|
| President | Vincent J. Papa |
| Chief Financial Officer | Michael Egner |
| Vice President | Thomas Shiah |
| Secretary | Vincent Papa |
| Assistant Secretary | Elizabeth Moy |

IN WITNESS THEREOF, each of the undersigned has executed this Unanimous Consent of Shareholders as of the day and year set forth above.


_____
Katrin Ildiko Hodapp
Co-Executor of Hodapp Estate

_____
Elizabeth Moy
Co-Executor of Hodapp Estate


_____
Michael Cornish

_____
Vincent J. Papa


_____
Patrick Schnitzer

_____
Lorenz Fischer-Zernin


_____
Demetrios Diakolios

RESOLVED, that the following person is elected as the Sole Director of the Company, to hold office until the next Shareholders meeting and until the respective successors are chosen and qualify;

Vincent J. Papa

RESOLVED, that the following named persons be and hereby are elected officers of this Company to hold office as provided in the by-laws and until their respective successors are chosen and qualify;

| | |
|---|---|
| President | Vincent J. Papa |
| Chief Financial Officer | Michael Egner |
| Vice President | Thomas Shiah |
| Secretary | Vincent Papa |
| Assistant Secretary | Elizabeth Moy |

IN WITNESS THEREOF, each of the undersigned has executed this Unanimous Consent of Shareholders as of the day and year set forth above.

_____
Katrin Ildiko Hodapp
Co-Executor of Hodapp Estate

_____
Michael Cornish

_____
Patrick Schnitzer

_____
Demetrios Diakolios

_____
Elizabeth Moy
Co-Executor of Hodapp Estate

_____
Vincent J. Papa

_____
Lorenz Fischer-Zernin

# EXHIBIT 1

**Lakeland Development DIP**
**Projected Cash Flow 2014-15**

| | Actual November | Actual December | Actual January | Actual February | Total | Budget November | Budget December | Budget January | Budget February | Total | Variance Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **SOURCE** | | | | | | | | | | | |
| Balance Forward | 2,217,122 | 1,856,151 | 1,421,401 | 967,409 | 2,217,122 | 2,216,460 | 1,928,786 | 1,749,111 | 1,628,736 | 2,216,460 | - |
| General Account | | | | | - | | | | | | - |
| Payroll Account | | | | | - | | | | | | - |
| Ridgeline Overhead | | | | | - | | | | | | - |
| Ridgeline Other Payments | | | | | - | | | | | | - |
| Ridgeline Stock Sale | | | | | - | | | | | | - |
| Ridgeline Management Contract Payments | | | | | - | | | | | | - |
| LDC 70% Allocation of Sources Below | | | | | - | | | | | | - |
| Goodman SFS | | | | | - | | | | | | - |
| Sales of Furnitures, Office Supplies,Equipments | 6,847 | 3,105 | 6,323 | 5,276 | 21,551 | 10,000 | 35,000 | 50,000 | 20,000 | 115,000 | (93,449) |
| Other | 231 | 190 | 130 | | 551 | | | | | - | 551 |
| Total Sources | $ 2,224,200 | $ 1,859,446 | $ 1,427,854 | $ 972,685 | 2,239,224 | $ 2,226,460 | $ 1,963,786 | $ 1,799,111 | $ 1,648,736 | 2,331,460 | (92,898) |
| | | | | | | | | | | | |
| **USE** | | | | | - | | | | | | |
| Payroll | | | | | | | | | | | |
| Gross Earnings | 67,882 | 67,622 | 59,788 | 46,950 | 242,242 | $ 68,070 | $ 68,070 | $ 68,070 | 68,070 | 272,280 | (30,038) |
| Taxes-Employer | 1,952 | 3,613 | 4,928 | 3,654 | 14,147 | 5,902 | 5,902 | 5,902 | 5,902 | 23,607 | (9,460) |
| Employees year end bonus | | 40,000 | | | 40,000 | | | | | - | 40,000 |
| Medical | 11,155 | 9,506 | 9,506 | 6,046 | 36,213 | 11,700 | 11,700 | 11,700 | 11,700 | 46,800 | (10,587) |
| Vision | 159 | 159 | 159 | 159 | 636 | 159 | 159 | 159 | 159 | 636 | 0 |
| Life & Disability | 288 | 288 | 288 | 288 | 1,152 | 268 | 268 | 268 | 268 | 1,072 | 80 |
| Worker's Comp | 474 | 474 | 500 | 1,231 | 2,679 | 350 | 350 | 350 | 350 | 1,400 | 1,279 |
| 401 (k) Admin Fees | | 826 | | | 826 | | | 826 | | 826 | - |
| Total Payroll | $ 81,910 | $ 121,662 | $ 75,995 | $ 58,328 | 337,895 | $ 86,449 | $ 86,449 | $ 87,275 | $ 86,449 | 346,621 | (8,726) |
| Office and Operations | | | | | - | | | | | | |
| Banking Services | 267 | 252 | 233 | 119 | 871 | 180 | 180 | $ 180 | 180 | 720 | 151 |
| Computer Expenses | 1,645 | 1,645 | 100 | | 3,390 | 1,700 | 1,700 | 1,700 | 1,700 | 6,800 | (3,410) |
| General Contracted Services | | 126 | 4,000 | 338 | 4,464 | 22,000 | 2,000 | 2,000 | 2,000 | 28,000 | (23,536) |
| Demolition Project Expense | 247,243 | 293,618 | 148,250 | 144,210 | 833,321 | 131,000 | 50,000 | 20,000 | 20,000 | 221,000 | 612,321 |
| Courier Services | | 41 | 82 | 105 | 228 | 180 | 180 | 180 | 180 | 720 | (492) |
| Dues and Misc. | | | 1,287 | | 1,287 | 73 | 73 | 73 | 73 | 291 | 996 |
| Trustee Payment & Tax returns | 7,000 | | 4,875 | | 11,875 | 7,000 | | 4,875 | | 11,875 | - |
| Rent to Goodman | | | | | - | | 25,000 | 5,000 | 5,000 | 35,000 | (35,000) |
| Janitorial Expenses | | 350 | 823 | | 1,173 | 350 | 350 | 350 | 350 | 1,400 | (227) |
| Landscaping Expenses | | | | | - | | | | | - | |
| Licenses & Permits | | 120 | | | 120 | | | | | - | 120 |
| Maintenance & Repair | 414 | | | | 414 | 200 | 200 | 200 | 200 | 800 | (386) |
| Office Supplies | | | 170 | | 170 | 300 | 300 | 300 | 300 | 1,200 | (1,030) |
| General Operating Supplies | | | | | - | 100 | 100 | 100 | 100 | 400 | (400) |
| Settlements | | | | | - | | | | | - | |
| Payroll Processing Services | 388 | 248 | 282 | 371 | 1,289 | 320 | 320 | 320 | 320 | 1,280 | 9 |
| Recording/Notary Services | | | | | - | 200 | 200 | 200 | 200 | 800 | (800) |
| Copiers-Equip Rental | 1,626 | 749 | 379 | 1,367 | 4,121 | 842 | 842 | 842 | 842 | 3,368 | 753 |
| Storage-File Retention | 1,495 | | 1,495 | 1,495 | 4,485 | 1,450 | 1,450 | 1,450 | 1,450 | 5,800 | (1,315) |
| Telephone or Communication Exp | 1,441 | 1,561 | 1,504 | 809 | 5,315 | 1,700 | 1,700 | 1,700 | 1,700 | 6,800 | (1,485) |
| Trash Disposal | 1,165 | 1,165 | | 1,510 | 3,840 | 1,200 | 1,200 | 1,200 | 1,200 | 4,800 | (960) |
| Vehicle Expense | | | 104 | | 104 | 300 | 300 | 300 | 300 | 1,200 | (1,096) |
| Travel & Other Employee Exp | 691 | 5,026 | | 1,869 | 7,586 | 1,500 | 1,500 | 1,500 | 1,500 | 6,000 | 1,586 |
| Electricity | 15,000 | 10,623 | 12,515 | 10,000 | 48,138 | 2,000 | 2,000 | 2,000 | 2,000 | 8,000 | 40,138 |
| Gas | 180 | 159 | 34 | | 373 | 150 | 150 | 150 | 150 | 600 | (227) |
| Water | 400 | 699 | 462 | 878 | 2,439 | 700 | 700 | 700 | 700 | 2,800 | (361) |
| Total Office | $ 278,955 | $ 316,382 | $ 176,595 | $ 163,071 | 935,003 | $ 173,445 | $ 90,445 | $ 45,320 | $ 40,445 | 349,654 | 585,349 |
| Bookkeeping | | | | | - | 700 | 700 | 700 | 700 | 2,800 | (2,800) |
| Reserve for admin cost | | | 207,855 | | 207,855 | 30,240 | 30,240 | 30,240 | 30,240 | 120,960 | 86,895 |
| Insurance: General, Auto, Property | 7,184 | | | | 7,184 | 6,842 | 6,842 | 6,842 | 6,842 | 27,368 | (20,184) |
| Total Other | $ 7,184 | $ - | $ 207,855 | $ - | 215,039 | $ 37,782 | $ 37,782 | $ 37,782 | $ 37,782 | 151,128 | 63,911 |
| Total Uses | $ 368,049 | $ 438,044 | $ 460,445 | $ 221,399 | 1,487,937 | $ 297,676 | $ 214,676 | $ 170,376 | $ 164,675 | 847,404 | 640,533 |
| **BALANCE** | $ 1,856,151 | $ 1,421,401 | $ 967,409 | $ 751,284 | 751,284 | $ 1,928,786 | $ 1,749,111 | $ 1,628,736 | $ 1,484,061 | 1,484,060 | (733,431) |
| | | | | $ - | | | | | | | |

# EXHIBIT 2

**Lakeland Development LLP**
**Projected Cash Flow 2014-15**

| | Budget March | | Budget April | | Budget May | | Budget June |
|---|---|---|---|---|---|---|---|
| **SOURCE** | | | | | | | |
| Balance Forward | 751,284 | | 628,461 | | 717,514 | | 851,229 |
| Ridgeline Stock Sale | 120,000 | | 250,000 | | 250,000 | | 250,000 |
| Sales of Furnitures, Office Supplies,Equipments | 15,000 | | 15,000 | | 15,000 | | 15,000 |
| Other | | | | | | | |
| Total Sources | $ 886,284 | $ | 893,461 | $ | 982,514 | $ | 1,116,229 |
| | | | | | | | |
| **USE** | | | | | | | |
| | | | | | | | |
| Payroll | | | | | | | |
| Gross Earnings | $ 46,873 | $ | 46,873 | $ | 52,732 | $ | 23,437 |
| Taxes-Employer | 4,664 | | 4,064 | | 4,572 | | 2,332 |
| Employees year end bonus | | | | | | | |
| Medical | 7,751 | | 7,751 | | 7,751 | | 7,751 |
| Vision | 159 | | 159 | | 159 | | 159 |
| Life & Disability | 245 | | 268 | | 268 | | 268 |
| Worker's Comp | 350 | | 350 | | 350 | | 350 |
| 401 (k) Admin Fees | | | 826 | | | | |
| Total Payroll | $ 60,042 | $ | 60,291 | $ | 65,832 | $ | 34,296 |
| Office and Operations | | | | | | | |
| Banking Services | 180 | $ | 180 | $ | 180 | $ | 180 |
| Computer Expenses | 500 | | 1,700 | | 1,700 | | 1,700 |
| General Contracted Services | | | 2,000 | | 2,000 | | 2,000 |
| Demolition Project Expense | 100,000 | | 45,000 | | 10,000 | | 10,000 |
| Courier Services | 180 | | 180 | | 180 | | 180 |
| Trustee Payment & Tax returns | | | 4,875 | | | | |
| Janitorial Expenses | 350 | | 350 | | 350 | | 350 |
| Maintenance & Repair | 200 | | 200 | | 200 | | 200 |
| Office Supplies | 300 | | 300 | | 300 | | 300 |
| General Operating Supplies | 100 | | 100 | | 100 | | 100 |
| Payroll Processing Services | 320 | | 320 | | 320 | | 320 |
| Copiers-Equip Rental | 842 | | 842 | | 842 | | 842 |
| Storage-File Retention | 1,450 | | 1,450 | | 1,450 | | 1,450 |
| Telephone or Communication Exp | 1,700 | | 1,700 | | 1,700 | | 1,700 |
| Trash Disposal | 1,200 | | 1,200 | | 1,200 | | 1,200 |
| Travel & Other Employee Exp | 1,500 | | 1,500 | | 1,500 | | 1,500 |
| Electricity | 7,170 | | 7,170 | | 5,000 | | 5,000 |
| Gas | 150 | | 150 | | 150 | | 150 |
| Water | 700 | | 500 | | 500 | | 500 |
| Total Office | $ 116,842 | $ | 69,717 | $ | 27,672 | $ | 27,672 |
| Bookkeeping | 700 | | 700 | | 700 | | 700 |
| Reserve for admin cost | 30,240 | | 30,240 | | 30,240 | | 30,240 |
| Insurance: General, Auto, Property | 50,000 | | 15,000 | | 6,842 | | 6,842 |
| Total Other | $ 80,940 | $ | 45,940 | $ | 37,782 | $ | 37,782 |
| Total Uses | $ 257,824 | $ | 175,948 | $ | 131,286 | $ | 99,750 |
| **BALANCE** | **$ 628,461** | **$** | **717,514** | **$** | **851,229** | **$** | **1,016,479** |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 11500 West Olympic Blvd, Suite 400, Los Angeles, California 90064-1525. A true and correct copy of the foregoing document described as **CHAPTER 11 STATUS REPORT; DECLARATION OF VINCENT PAPA** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On February 26, 2015, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On February 26, 2015, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on February 26, 2015 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Judge Richard Neiter, bin outside courtroom 1645, 255 East Temple Street, Los Angeles, California 90012 (hand delivered by attorney service)

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| February 26, 2015 | Richard T. Baum | /s/ Richard T. Baum |
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                           **F 9013-3.1**

**LAKELAND DEVELOPMENT COMPANY**

*2:12-bk-25842 RN*

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

Attorneys for Debtor Lakeland Development Company:
•Richard T Baum    rickbaum@hotmail.com, rickbaum@ecf.inforuptcy.com
•Lawrence M Jacobson    lmj@gfjlawfirm.com

Attorneys for Secured Creditor 12345 Lakeland LLC:
•Lorie A Ball    LABall@rkmc.com
•Howard J Weg    HJWeg@rkmc.com

Attorney for Goodman Santa Fe Springs SPE LLC:
•Randy P Orlik    rorlik@coxcastle.com

Attorney for Ridgeline Energy Services (USA) Inc.:
•Louis E Kempinsky    lek@kempinskylaw.com

Attorney for the County of Los Angeles Treasurer/Tax Collector:
•Barry S Glaser    bglaser@swesq.com, erhee@swesq.com

Attorneys for Creditor Argo Partners:
•Matthew A Gold    courts@argopartners.net
•Richard  H Golubow    rgolubow@winthropcouchot.com,  pj@winthropcouchot.com;
vcorbin@winthropcouchot.com

Attorney for the City of Santa Fe Springs:
•Ronald E Ostrin    ron@ostrinlaw.com

Attorneys for Creditors Loeb & Loeb:
•Lance N Jurich    ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com
•Jeanne C Wanlass    jwanlass@loeb.com, karnote@loeb.com;ladocket@loeb.com

Attorney for Regional Water Quality Control Board, Los Angeles Region; State Water
Resources Control Board:
•Noah M Golden-Krasner   noah.goldenkrasner@doj.ca.gov, gwen.blanchard@doj.ca.gov

Attorney for SoCal Developers, Michael Abbasfard:
•Christopher F Wilson    cfw.cwanda@gmail.com, cindy.c.wilson@gmail.com

Attorney for Secured Creditor Iron Mountain:
•Joseph Corrigan    Bankruptcy2@ironmountain.com

Attorney for Creditor Seaport Group:
•Scott D Friedberg    sfriedberg@theseaportgroup.com, sdfriedberg@gmail.com

Attorney for Creditors ACE Property and Casualty Insurance Company and Central
National Insurance Company of Omaha:
•Mark D Plevin    mplevin@crowell.com

**CHAPTER 11 STATUS REPORT**

- 9 -

Attorney for National Union Fire Insurance Company of Pittsburgh, PA:
•Stephen Wong      swong@spcclaw.com

Attorney for Creditor Smith, Gambrell & Russell:
•John G McCarthy      jmccarthy@sgrlaw.com, nyoecf@sgrlaw.com

Attorneys for the Office of the United States Trustee:
• Kenneth G Lau      kenneth.g.lau@usdoj.gov
• United States Trustee (LA)      ustpregion16.la.ecf@usdoj.gov


**SERVED BY U.S. MAIL OR OVERNIGHT MAIL:**

By US Mail:

Special Notice:

Rafael Bernardino
Hobson Bernardino + Davis LLP
725 S Figueroa St, Ste 3230
Los Angeles, CA 90017

H. Henry Eshraghian
Expert Accounting & Tax Firm
112 W 9th St Ste 325
Los Angeles, CA 90015

The Seaport Group LLC Profit Sharing Plan
c/o The Seaport Group LLC
Attn: Scott Friedberg
360 Madison Ave 22nd Fl
New York, NY 10017